Frederick CARROZZA Sr.

v.

Samuel P. CARROZZA et al.

No. 2007–105–Appeal.

Supreme Court of Rhode Island.

April 7, 2008.

Frederick A. Costello, Esq, Warwick, for Plaintiff.

Virginia Spaziano, Esq., for Defendant Chevron Investors LLC.

Thomas M. Petronio, Esq., Greenville, for Defendant Carrozza.

Present: WILLIAMS, C.J.,
GOLDBERG, SUTTELL, and
ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The plaintiff, Frederick Carrozza Sr. (plaintiff or Frederick Sr.), appeals from a Superior Court judgment in favor of the defendants, Samuel P. Carrozza (Samuel), Ellen Carrozza (Ellen),[1] and Chevron Investors, LLC (Chevron) (collectively defendants). The trial justice first determined that certain deeds executed by the plaintiff and his mother, Edith Carrozza (Edith), were valid and then denied the plaintiff's adverse possession claim. This case came before the Supreme Court for oral argument on March 6, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

This case involves a dispute over the ownership of certain real property at 168–172 Atwells Avenue, Providence (Atwells Avenue Property). From 1948 until 2002, the Atwells Avenue Property had been in the hands of one or more members of the Carrozza family. In 1948, Philip Carrozza (Philip) and his wife, Edith, the parents of Frederick Sr., acquired title to the Atwells Avenue Property via warranty deed. Although ownership of the property was transferred among members of the Carrozza family several times between 1948 and 1986, we are concerned solely with the real estate transactions commencing in 1986.

On July 31, 1986, Frederick Sr.'s brother, Samuel, and Samuel's wife, Ellen, who had owned the Atwells Avenue Property as tenants by the entirety, transferred the property by way of a quitclaim deed to Samuel, Ellen, and Samuel's mother, Edith, as tenants in common. On that same day, Samuel, Ellen, and Edith transferred the property, by quitclaim deed, to Frederick Sr., Samuel, and Ellen, as tenants in common. Both deeds were recorded in the Providence Land Evidence Records.

Samuel, Ellen, and Frederick Sr. each owned a 33 percent interest in the Atwells Avenue Property for more than six years. Then, on September 24, 1992, Frederick Sr. transferred his one-third interest in the property to his mother, Edith, by warranty deed; however, this deed was not notarized. Also, rather than sign his name, Frederick Sr. printed his name on the document. This deed was recorded in book 2635 at page 85 in the Providence Land Evidence Records. The next day, on September 25, 1992, Edith transferred her interest in the Atwells Avenue Property to her grandson, Frederick Carrozza Jr. (Frederick Jr.) by means of a warranty deed. On this deed, Edith printed her name, rather than sign her name on the document. This deed was recorded in book 2635 at page 84 in the Providence Land Evidence Records.[2]

---

1. Ellen Carrozza is now deceased.

2. It is unclear why the first two disputed deeds were recorded out of order. However, that fact does not affect our analysis.

Apparently, the fact that neither Frederick Sr. nor Edith fashioned a signature on the deeds and the fact that the September 24, 1992 deed was not notarized, caused the parties to create and file corrective deeds. On December 7, 1992, a warranty deed, entitled "Corrective Deed," was filed, reciting that Frederick Sr. conveyed his interest in the Atwells Avenue Property to Edith. Also on December 7, 1992, a warranty deed, entitled "Corrective Deed," was filed, reciting that Edith conveyed her interest in the Atwells Avenue Property to "Frederick Carrozza" of "541 Bellevue Avenue, Newport, R.I." This second corrective deed failed to specify whether the deed transferred her interest to Frederick Sr. or Frederick Jr. These two deeds were recorded in book 2672 at pages 221 and 222, respectively, in the Providence Land Evidence Records.

Almost one year later, on September 24, 1993, Edith transferred, by quitclaim deed, her interest in the Atwells Avenue Property to Frederick Carrozza Jr. of 541 Bellevue Avenue, Newport, Rhode Island. The quitclaim deed stated that it was intended to correct the grantee's name as it appeared on the December 7, 1992 deed that omitted "Jr."

On August 19, 2002, Frederick Jr. died. Thereafter, Chevron acquired Frederick Jr.'s one-third interest in the Atwells Avenue Property.

Approximately two years later, on September 21, 2004, Frederick Sr. filed suit against Samuel, Ellen, and Chevron, seeking to set aside the September 24, 1992 and September 25, 1992 deeds. Alternatively, Frederick Sr. asked the court to find that he became the rightful owner of the Atwells Avenue Property by adverse possession. Then, on November 24, 2004, Ellen died and her interest in the Atwells Avenue Property was transferred to her husband, Samuel.

Meanwhile, on June 2, 2005, defendants' motion to consolidate this case with a related, pending matter commenced by Samuel P. Carrozza against Frederick Carrozza Sr., case PC 05–2124, was granted. After the cases were consolidated, Chevron filed a motion for summary judgment, pursuant to Rule 56(b) of the Superior Court Rules of Civil Procedure. Frederick Sr. objected to the summary-judgment motion and filed with the court an affidavit, in which, *inter alia,* he denied that the signatures in the signature block of the September 24, 1992 deed and the December 7, 1992 corrective deed were his own.

After a hearing on Chevron's motion for summary judgment, a Superior Court justice determined, on January 23, 2007, that there were no genuine issues of material fact and defendants were entitled to judgment as a matter of law. The motion justice concluded that the deed dated September 24, 1992, conveying Frederick Sr.'s interest to Edith, was valid; additionally, she found that the September 25, 1992 deed through which Edith conveyed her interest to Frederick Jr. likewise was valid. Accordingly, the motion justice determined that Chevron is the record holder of a one-third interest in the Atwells Avenue Property. Finally, she ruled that because of the warranties contained in the deed from Frederick Sr. to Edith, Frederick Sr. could not prevail on his claim for adverse possession of the Atwells Avenue Property. The plaintiff timely appealed.

## II

### Analysis

The plaintiff contends that the motion justice improperly granted Chevron's motion for summary judgment because (1) a genuine issue of material fact exists and (2) defendants are not entitled to judgment

as a matter of law. Specifically, plaintiff alleges that it is not his signature on the September 24, 1992 deed, and also that he did not sign the December 7, 1992 corrective deed. Further, plaintiff maintains that both the September 24, 1992 deed and the September 25, 1992 deeds, along with the subsequent corrective deeds, contain defects that render them invalid. Finally, plaintiff alleges that even if the deeds are valid, he acquired title to the Atwells Avenue Property by adverse possession.

## A

### Standard of Review

When this Court reviews a grant of a summary-judgment motion, we conduct a *de novo* review, applying the same standards as the motion justice. *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275 (R.I.2007). Pursuant to Rule 56(c), a motion for summary judgment is appropriately granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

To prove the existence of a genuine dispute of a material fact, an adverse party may not rely solely upon the allegations and denials set forth in the pleadings. *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998). Rather, the parties may file affidavits either in support or in defense of the motion for summary judgment, to enable the motion justice to determine whether a genuine issue of material fact exists. *Id.* However, "naked conclusory assertions in an affidavit * * * are inadequate to establish the existence of a genuine issue of material fact * * *." *Roitman & Son, Inc. v. Crausman*, 121 R.I. 958, 959, 401 A.2d 58, 59 (1979) (mem.).

## B

### Validity of Deeds

The plaintiff contests the validity of several deeds in Chevron's chain of title. We will address each deed in turn.

### 1

### September 24th and 25th Deeds

First, plaintiff maintains that the September 24, 1992 deed, in which plaintiff allegedly conveyed, by warranty deed, his one-third interest in the Atwells Avenue Property to Edith, is invalid because the signature is not proper and the deed is not notarized. In examining the validity of a conveyance of real property, we look to G.L. 1956 § 34–11–1, which sets forth the requirements for every land conveyance. Section 34–11–1 states that a conveyance "shall be void unless made in writing duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands * * * are situated * * *."

This section specifically provides that the writing must be duly "signed." The plaintiff maintains that there was no "signature" in the area where the title grantor is listed; rather, his name was in print elsewhere on the deed. However, "[a] signature is nothing more than a special mark that clearly identifies the person signing the document." 14 Richard R. Powell, *Powell on Real Property* § 81A.04[1][e] at 81A–55 (Michael Allan Wolf ed., Matthew Bender 2007). *See also Abbott v. Zoning Board of Review of Warwick*, 78 R.I. 84, 87, 79 A.2d 620, 622 (1951) (holding that there is no "provision by statute or otherwise requiring that a signature by mark, especially if it is duly witnessed as it was in the present petition, be supported by affidavit * * *").

Black's Law Dictionary defines the term "signature" as "A person's name or mark written by that person or at that person's direction." Black's Law Dictionary 1415 (8th ed. 2004). We are further persuaded by the more explicit entry in the dictionary's sixth edition, in which the term "signature" was defined quite broadly. "A signature may be written by hand, printed, stamped, typewritten, engraved, photographed, or cut from one instrument and attached to another * * *." Black's Law Dictionary 1381 (6th ed. 1990). The validity of a signature, therefore, does not turn on the form of the mark; indeed any mark will suffice, as long as that mark is adopted as one's own. The plaintiff's argument, that his signature was invalid because it was printed on the document in separate block letters, rather than in cursive adjoining letters, must fail.

Moreover, plaintiff admitted, in his deposition, that it was indeed his signature on the deed and that he intended to convey his interest in the property to Edith by deed. Thus, there is no genuine issue of material fact about whether plaintiff conveyed his interest in the Atwells Avenue Property to Edith.

The plaintiff also attacks the September 24, 1992 deed by alleging that because the deed was not notarized, it was not "acknowledged," in accordance with one of the requirements set forth in § 34–11–1. However, this provision provides for an exception to the acknowledgement requirement. Section 34–11–1 dictates that "the conveyance, if delivered, as between the parties and their heirs, and as against those taking by gift or devise, or those having notice thereof, *shall be valid and binding though not acknowledged* or recorded." (Emphasis added.) Evidently, the General Assembly has anticipated the tendency of land transfers among family members to observe fewer formalities and thus has sought to maintain the validity of these less formal transfers nevertheless. Indeed, in *Rhode Island Hospital Trust National Bank v. Boiteau*, 119 R.I. 64, 69, 376 A.2d 323, 326 (1977), this Court held that "[a] deed, if delivered, is valid and binding against those who have knowledge of it even if not acknowledged or recorded."

To adopt plaintiff's argument would be to exalt form over substance, which this Court is not inclined to do under this set of facts. Although plaintiff failed to have his conveyance to Edith notarized, the fact that the deed was not acknowledged does not affect its validity. Accordingly, we conclude that the September 24, 1992 deed is valid.

To contest the validity of the September 25, 1992 deed, plaintiff makes a similar argument—because Edith printed her signature on the document rather than sign her signature where the grantor's signature should be located, the deed is invalid. For the above-stated reasons, this argument also fails. The September 25, 1992 deed is valid; therefore Edith properly transferred her one-third interest in the Atwells Avenue Property to her grandson Frederick Jr.

### 2

### December 7, 1992 Corrective Deeds

We already have recognized the validity of the September 24, 1992 deed as well as the September 25, 1992 deed. Accordingly, the validity of the corrective deeds need not be discussed, because the earlier deeds already had conveyed plaintiff's one-third interest first to Edith and then to Frederick Jr.

### C

### Adverse Possession

The plaintiff offers one final argument to this Court on appeal. He alleges

that if this Court finds the aforementioned deeds valid, then he acquired the Atwells Avenue Property by adverse possession, through his open, notorious, continuous, and hostile occupation of the property for more than fifty years. The precise issue is whether a grantor who conveys real property to a grantee can claim title later to that real property by adverse possession against the grantee's successor. We conclude that the grantor cannot reclaim title in this manner.

■ "This Court has long held that to establish adverse possession, a claimant's possession must be 'actual, open, notorious, hostile, under claim of right, continuous, and exclusive' for at least ten years." *Acampora v. Pearson*, 899 A.2d 459, 466 (R.I.2006) (quoting *Tavares v. Beck*, 814 A.2d 346, 350 (R.I.2003)). Acquisition of title by adverse possession is complicated, however, when the claimant is the original grantor of the same real property he now seeks to claim by adverse possession.

Section 34–11–15 provides that a warranty deed guarantees its grantee several enumerated protections. Specifically, the grantor guarantees:

"(1) That at the time of the delivery of such deed he or she is lawfully seised in fee simple of the granted premises,

"(2) That the granted premises are free from all incumbrances,

"(3) That he or she has then good right, full power, and lawful authority to sell and convey the same to the grantee and his or her heirs and assigns,

"(4) That the grantee and his or her heirs and assigns shall at all times after the delivery of such deed peaceably and quietly have and enjoy the granted premises, and

"(5) That the grantor will, and his or her heirs, executors, and administrators shall, warrant and defend the granted premises to the grantee and his or her heirs and assigns forever against the lawful claims and demands of all persons." *Id.*

The fourth and fifth covenants, the covenants of quiet enjoyment and future defense of title, are prospective covenants that can be broken only after the deed has been delivered. *Lewicki v. Marszalkowski*, 455 A.2d 307, 310 (R.I.1983). In effect, the grantor warrants that "he will defend and protect the [grantee] against the rightful claims of all persons thereafter asserted." *Id.* at 309.

■ With respect to claims of adverse possession, this Court specifically has held that the warranty covenants of quiet enjoyment and future defense of title preclude the grantor "from setting up any claim of adverse possession" against the grantee's successors. *Lewicki*, 455 A.2d at 310. In other words, a grantor who transfers freely his interest in certain real property cannot, at some later date, reassert the validity of his title in the property against a grantee or the grantee's successors in interest. *Id.* The guarantees accompanying a warranty deed prevent the grantor's acquisition by adverse possession. *Id.*

In this case, the plaintiff, the grantor, attempts to assert a claim of adverse possession against Chevron, a successor of his grantee, Edith. We have determined that the plaintiff conveyed his one-third interest in the Atwells Avenue Property to Edith by warranty deed, with warranty covenants. Thus, the plaintiff assured his grantee and his grantee's successors that they could peacefully and quietly enjoy the property and that he would defend the property against lawful claims and demands. Because we have held that a grantor of real property with warranty covenants cannot prevail on a claim of

adverse possession against the grantee's successors, the plaintiff's claim must fail.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

Justice FLAHERTY did not participate.